## EX PARTE R. T. WILLIAMSON.

### No. 3571. Decided May 19, 1915.

**Habeas Corpus—Capias Pro Fine—Plea of Guilty.**

Where, upon trial of habeas corpus, the record disclosed upon appeal that relator was arrested on a capias pro fine issued out of the Justice Court upon a conviction of a misdemeanor, and it appeared from the record on appeal that relator had not given his father nor anyone else authority to enter a plea of guilty in the Justice Court for him, but showed that he wished to plead not guilty and was never arrested or tried by the justice of the peace, the relator is discharged from custody without prejudice to the State.

Appeal from the County Court of Hopkins. Tried below before the Hon. Dan R. Junell.

Appeal from a habeas corpus proceeding asking release from arrest under a capias pro fine issued from the Justice Court.

The opinion states the case.

*Jo Dial,* for relator.

*C. C. McDonald,* Assistant Attorney General, and *H. E. Pharr,* for the State.

HARPER, JUDGE.—Relator was arrested on capias pro fine issued out of the Justice Court of precinct No. 8, Hopkins County, Texas. When arrested, W. E. Williamson, acting for relator, sued out a writ of habeas corpus before Hon. Dan R. Junell, county judge. Upon hearing the application the relator was remanded to the custody of the officer making the arrest, and from which judgment he prosecutes an appeal to this court.

The evidence adduced on the trial would show that relator is only seventeen years of age, and there being a complaint pending against him in Justice McKinney's court, his father appeared before the justice of the peace and entered a plea of guilty. A fine of $1 was entered, and relator's father was given until next court day to pay the fine and costs, amounting to about $11. Relator's father did not pay the amount, and, as before stated, he was arrested and placed in jail in default of payment of the fine.

Relator's contention is that his father had no authority to enter a plea of guilty for him, even though he was but seventeen years of age.

Justice McKinney testified: "All of the proceedings had are shown by the papers and docket entry. The defendant was never arrested, and his case was never called in court. But when we were having court, after the court of inquiry, the first case which was called on the 3rd of April, A. D. 1915, was a civil case in which Mr. Dial was one of the attorneys, and I think it was during a lull in business that Mr. Williamson, the father of the defendant, came to me and said, 'I understand you have two cases against Radford, one for destroying some cups and the other for fighting,' and that I told him there hadn't been but one filed, but we were going to file another case for destroy-

ing the cups, and his father said if they would throw out or wouldn't file the other case. that he would pay off with a dollar fine the fighting case. I never did call the defendant's case in open court and ask him if he wanted to plead in his case and if he wanted to waive a jury. The defendant was never arrested. I never talked to the defendant about his case, and only talked to his father. I don't know what the defendant wanted to do with his case."

Cross-examination by Mr. Pharr: "The defendant's father told me and Mr. Pharr that he would pay off the fighting case if we wouldn't file the other case against him. This was during a lull in the court while we were trying a civil case, and I told the defendant's father it would be all right with me if it was with Mr. Pharr, and the defendant's father said it was all right with Mr. Pharr, and then I told the defendant's father that I would give a fine of a dollar and let him pay it next court day; that at the time he was talking with defendant's father the defendant was not in court, but after he had entered on the docket a fine of one dollar at the suggestion of defendant's father, that the defendant, he thinks, came into court and he heard his father tell defendant that he was going to have to pay a fine for him, and that he wanted him to behave, and that the defendant's father and defendant talked some, but he did not hear what they were talking about. That he did not advise defendant of what his father had said, or that he was going to fine him a dollar.

"The defendant, Radford or R. T. Williamson, being placed on the witness stand, and interrogated by Mr. Dial, after being duly sworn, says: 'My name is Radford or R. T. Williamson; that I never entered a plea of guilty in Judge McKinney's court to any charge, and never authorized my father or anyone else to enter a plea of guilty for me. I told my father that I was not guilty and would not plead guilty to the offense I heard they had me charged with. I was never arrested by any officer on a warrant for any offense in Justice McKinney's court. On the 2nd of April, the day before court met at Birthright, precinct 8, Hopkins County, Texas, the constable came to my house and said he had a subpoena for me to be at Justice Court the next day. The next day I went over to the Justice Court and the justice of the peace and county attorney had me privately, after being placed under oath, to testify about a fight they had heard I had and also about some drinking cups being destroyed. I told them that I didn't do either, and they did not warn me before swearing me that I did not have to testify against myself, and they did not serve any warrant on me or place me under arrest. When the court opened out there at Birthright they did not call my case, nor ask me to plead in the case nor notify me of any fine. I did not waive any right of arrest, of the time in which to prepare for trial or a jury or consent to plead guilty to any charge or authorize anybody to plead guilty for me, because I had told the court in his private inquiry and my father that I was not guilty and would not plead guilty, and if anybody plead guilty for me it was without my authority. That if I am charged with any offense of fight-

ing or destroying cups I wanted a trial, and still want one. I am seventeen years of age and know that no case was called against me and no warrant was served, no jury was waived and no plea of guilty entered by me, nor did I authorize or request anybody to enter a plea of guilty for me.'

"Dave Parker was offered by the State and examined by Mr. Pharr, after having been duly sworn, says: 'I am deputy constable of precinct No. 8, Hopkins County, Texas. I heard the justice of the peace, Mr. Pharr, and Mr. Walter E. Williamson talking about Radford or R. T. Williamson's case in the Justice Court, and something was said by Mr. Walter E. Williamson about paying a fine if they threw one of the cases out, and the justice of the peace said all right he would give Walter E. Williamson until the next court day in which to pay it.' He did not see the defendant, R. T. Williamson or Radford Williamson, about when this conversation was going on."

It is thus seen that relator did not himself enter a plea of guilty, and had never been called to plead to the complaint. His father entered a plea of guilty for him, when he was not present, and the sole question is, can he be bound by the action of his father in doing so? The justice says that after the plea of guilty was entered relator came into the court, and he heard relator's father tell him that he was going to have to pay a fine for him—that he did not hear relator's reply, but saw them talking. Relator says he told his father he was not guilty and would not enter a plea of guilty; that he never entered a plea of guilty, and did not authorize his father or anyone else to do so for him.

The father of relator is not in jail—it is relator who has been placed behind the bars, and seeks his liberty, and while only a boy of seventeen years of age, yet he is entitled to a hearing and to be discharged if the plea of guilty was entered without his knowledge and consent. No one could enter this character of plea for him without his authority. Our laws hold a person only seventeen years of age amenable to their provisions, and when a plea of guilty is entered, it must be shown that the person to be punished under the judgment of conviction authorized such a plea to be entered. No one testifies that relator gave his father authority to enter the plea. On the other hand, the evidence we have before us is that he not only did not authorize his father to do so, but he swears that he told his father he was not guilty, and would not plead guilty.

Under such a state of facts we think the relator is entitled to a discharge, but this will be without prejudice to the State to arrest and prosecute him under the complaint, if it is desired to do so.

The judgment is reversed and relator is ordered discharged.

*Relator discharged.*